UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY R. ANKOFSKI,

        Plaintiff,

        v.

M&O MARKETING, INC.,
a Michigan Corporation, and
TIMOTHY J. OTTO, an Individual,
jointly and severally,

        Defendants.
_____/

Case No. 16-10284
Hon. Terrence G. Berg

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 17)**

## I. INTRODUCTION

This is a disability discrimination and retaliation case. Plaintiff Kimberly Ankofski alleges that Defendants M&O Marketing and Timothy Otto did not accommodate her disability of right vocal cord paralysis, fired her the day before she was to return to work following surgery for her illness, and did not hire her to an open position in retaliation for her filing a complaint with the Equal Employment Opportunity Commission. Defendants argue that the Court must dismiss the case because the parties agreed to arbitrate disputes like this, and that the Court must dismiss the case as to Defendant Otto because the Americans with Disabilities Act does not permit individual liability. Because the arbitration provision resides in a confidentiality agreement that expressly disclaims being an employment agreement, and because Defendant M&O will be liable for any actions of Defendant Otto taken

in his official capacity, Defendant's motion is **DENIED IN PART AND GRANTED IN PART**.

## II. BACKGROUND

Plaintiff began working for Defendant M&O in September of 1996. Around 2006, Defendant M&O promoted Plaintiff to the position of Executive Administrative Coordinator. In that role, Plaintiff worked both as a receptionist and as an assistant for administrative and warehousing tasks.

In 2010, Plaintiff and Defendant M&O entered into a "Confidentiality and Non-Solicitation Agreement" (signed on Defendant M&O's behalf by Defendant Otto in his capacity as President of M&O). Dkt. 17, Ex. 1. The agreement recited that Defendant M&O was in the business of soliciting and recruiting customers in the financial services industry, that as part of her employment Plaintiff would have access to valuable trade secrets and confidential information, and that Defendant M&O spent time and resources to develop its customer base and desired to protect that base. *Id.* at p. 2.

The agreement also contained an arbitration provision, which required the parties to resolve by arbitration "[a]ny controversy, claim or dispute arising out of or relating to [the Confidentiality and Non-Solicitation Agreement]." *Id.* at p. 6. Also in the Agreement, under a section labeled "Job Duties and Responsibilities," the parties noted that Plaintiff was to devote her full time, energies, and skills to performing her job. *Id.* at 2. The parties agreed, however, that the Confidentiality and Non-Solicitation Agreement was "not intended to be, and shall not be interpreted as, an

employment contract." *Id.* And, finally, the parties agreed that Plaintiff was an "at will" employee. *Id.*

In the summer of 2013, Plaintiff was diagnosed with right vocal cord paralysis, which limited her ability to breathe and talk. In January and February of 2014, Plaintiff asked Defendant M&O to accommodate her disability by relieving her of her receptionist duties but permitting her to continue her administrative and warehousing assistant duties. Defendant M&O denied Plaintiff's request. So in February 2014 Plaintiff took leave under the Family Medical Leave Act and underwent surgery.

While Plaintiff was on leave, Defendant M&O assigned two employees to cover Plaintiff's receptionist duties, and Sara Mullins to cover Plaintiff's administrative and warehousing assistant duties. Ms. Mullins received the title "full-time Supply Coordinator."

On May 6, 2014, Plaintiff's doctor cleared her to return to work with restrictions on using her voice. Plaintiff called Human Resources at Defendant M&O to let them know she would be returning to work the next day. Shortly after that call, Defendant Otto called Plaintiff to "save her the trip" of returning to work. Defendant Otto told Plaintiff that she could not return to work with any restrictions, and that she was being terminated. Plaintiff asked to be put in an open position that she could perform without restriction. Defendant Otto replied that he could not have Plaintiff working at the company with her condition and that there were no open positions.

After the call, and still on May 6, 2014, Plaintiff learned that Sara Mullins had recently resigned her position as Supply Coordinator, meaning there was a full-time position open that Plaintiff could perform without any accommodation. Plaintiff contacted the Supply Manager about the open position, told him that she could perform the job without restrictions, and submitted her resume. Defendant M&O gave the job to another applicant.

Plaintiff filed charges with the Equal Employment Opportunity Commission on November 19, 2014. A few months later, Defendant M&O posted an open Supply Coordinator position on both Monster.com and Indeed.com. Two days after the posting went live, Plaintiff emailed Defendant M&O asking to be considered for the position. Defendant M&O responded that it would not consider her for the position because of the EEOC charges she filed.

After a nine-month investigation, the EEOC determined that reasonable cause existed that Plaintiff's firing constituted discrimination. The EEOC issued a Notice of Right to Sue, and Plaintiff filed this lawsuit on January 3, 2016, alleging discrimination and retaliation. Defendant filed an answer and affirmative defenses, and then amended its answer to include the affirmative defense of required arbitration.

Defendants now argue that the Court should dismiss the case because the Confidentiality and Non-Solicitation Agreement requires the parties to arbitrate Plaintiff's claims. Defendant Otto also argues that the Court should dismiss him because Title VII does not provide for individual liability.

4

## III. ANALYSIS

### A. *Standard of Review*

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

*B. Discussion*

Defendants both argue that the Confidentiality and Non-Solicitation Agreement requires the parties to arbitrate Plaintiff's discrimination and retaliation claims. Plaintiff responds that the Agreement does not require arbitration because the parties did not intend the arbitration provision to cover a federal disability-discrimination lawsuit. Defendant Otto also argues that he cannot be held individually liable for discrimination under Title VII. Plaintiff responds that Defendant Otto should remain in the case because he qualifies under the ADA's statutory definition of employer. The Court will address each argument in turn.

1. *Arbitration*

"[T]he Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 and 4). The Act "is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 (1985)). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Id.*; s*ee also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010) (noting that parties are free to specify "the issues they choose to arbitrate," "rules under which any arbitration will proceed,"

"who will resolve specific disputes," and "with whom they choose to arbitrate their disputes").

Courts review arbitration agreements according to the applicable state law of contract formation. *See Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). When determining the scope of an arbitration provision under Michigan law, courts apply a three-part test that asks: "1) is there an arbitration agreement in a contract between the parties; 2) is the disputed issue on its face or arguably within the contract's arbitration clause; and 3) is the dispute expressly exempted from arbitration by the terms of the contract." *Petorovski v. Nestorovski*, 283 Mich. App. 177, 202 (2009).

The answers to the first and third parts of the test are undisputed. The parties had a contract with an arbitration provision (the Confidentiality and Non-Solicitation Agreement) and that contract did not expressly exempt Title VII claims from the arbitration requirement. Thus the Court must determine whether Plaintiff's Title VII claims are on their face within, or are arguably within, the arbitration clause.

Defendants argue that the phrase "relating to this Agreement" expresses the parties' intention to have all disputes connected with their relationship resolved through arbitration. Dkt. 17, p. 12. Arguing that the words "relating to" are broad, Defendants submit that "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Id.* (quoting *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005)).

Defendants then argue that the Confidentiality and Non-Solicitation agreement establishes and defines the relationship between Plaintiff and Defendant M&O and explains her job duties and responsibilities. Dkt. 17, p. 14. Plaintiff's discrimination and retaliation claims, according to Defendants, therefore relate to the Agreement because Plaintiff alleges that Defendants failed to accommodate her by limiting her job duties and because the Agreement has a section entitled "Job Duties and Responsibilities" which reserves to Defendant M&O the right to direct Plaintiff's job duties and responsibilities. *Id.* at pp. 14-15.

Plaintiff responds that her disability discrimination and retaliation claims do not touch upon, refer to, or relate to any rights or obligations set forth in the Agreement, which by its terms only addresses the topic of confidentiality of Defendant M&O's business information and protection of Defendant M&O's client base. Dkt 18, p. 10. Plaintiff further emphasizes that the Agreement expressly indicates that it is not an employment contract. *Id.* at p. 11. Finally, Plaintiff submits that her claims concern statutory discrimination in the employment relationship, a subject Plaintiff argues is not addressed by the Agreement. *Id.*

Plaintiff is correct. As the Sixth Circuit has noted, "while ambiguities in the language of the agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Glazer*, 394 F.3d at 450. Here, the agreement concerns confidentiality and non-solicitation. Although the agreement does mention that Plaintiff would devote her

energies full time to her job duties and that Defendant M&O would direct those duties, the agreement states explicitly that it "is not intended to be, and shall not be interpreted as, an employment contract." Defendants argue that this language was intended merely to state that Plaintiff was an at-will employee. But the Agreement says that Plaintiff is an at-will employee in the very next sentence, and starts that sentence with the word "moreover"—thus suggesting that the declaration that the employment relationship was "at-will" was a separate and additional point, independent from the previous statement which proclaimed the parties' intent that the Agreement was "not intended to be" and "shall not be interpreted as" an employment contract.

To frame Defendants' argument differently, they contend that the Court should minimize

- the Agreement's title: Confidentiality and Non-Solicitation Agreement;
- the four pages of obligations of confidentiality and non-solicitation; and
- the statement that the agreement is "not intended to be . . . an employment contract"

but should emphasize a single sentence—a sentence that says only that Plaintiff must devote her energies exclusively to her job and that Defendant M&O will direct her job duties. Viewing this provision as paramount, Defendants argue that the Court should conclude that the Agreement's arbitration clause governs the employment relationship between Plaintiff and Defendants and that in signing the Agreement Plaintiff agreed to waive her statutory right to sue under Title VII. This argument is

9

unconvincing, and it gains no strength from Defendants' using the term "Arbitration Agreement" to describe the document bearing the title "Confidentiality and Non-Solicitation Agreement." It contravenes common sense to say that an employee's disability discrimination and retaliation claims arising out of an employment relationship "relate to" an agreement that *expressly disclaims being an employment agreement*.

Defendants' argument is without merit, and their motion with respect to arbitration is **DENIED**.

### 2. *Otto as employer or supervisor*

Defendant Otto further argues that under Sixth Circuit precedent he cannot be held individually liable for Title VII discrimination. Dkt. 17, p. 16. Plaintiff agrees, but argues that it is not suing Otto in his individual capacity but in his official capacity—a capacity on which the Sixth Circuit has not held whether there can be liability. Dkt. 18, p. 16. Plaintiff is correct that the Sixth Circuit has been silent on whether an individual can be sued in his official capacity:

> While the law is clear that a supervisor cannot be held liable in his or her individual capacity for violations of Title VII, there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the 'alter ego' of the employer.

*Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001).

District courts in the Circuit, however, have differed in their application of *Little*. *See, e.g., Maudlin v. Inside Out Inc.*, 2014 U.S. Dist. LEXIS 46228, at *8 (S.D. Ohio 2014) (dismissing director from case when company was also named because it would

be redundant given that company would be liable for any discrimination by director acting in official capacity); *Campbell v. Korleski*, 2011 U.S. Dist. LEXIS 76310 (S.D. Ohio 2011) (allowing claims against individuals in their official capacity because defendants did not challenge the validity of Title VII claims against individuals); *Trimble v. IQ Group*, 2010 U.S. Dist. LEXIS 102004, (E.D. Tenn. 2010) (holding that the owner of a company was the company's 'alter ego' and could be considered as an employer under Title VII); *Butler v. Cooper-Standard Auto, Inc.*, 2009 U.S. Dist. LEXIS 13448 (N.D. Ohio 2009) (holding that supervisor did not have enough control to be considered the employer's 'alter ego'); *Baba-Singhri v. Central State Univ.*, 2008 U.S. Dist. LEXIS 18355 (S.D. Ohio 2008) (allowing claims to continue against defendants in their official capacities, but dismissing claims as to their individual capacities).

Here, Plaintiff has alleged that Defendant Otto has enough control over the company to act as its alter ego. He is the President and co-owner, and the one who called to tell Plaintiff she could not come back to work (thus suggesting he was in charge of hiring employees). But, as the *Maudlin* court recognized, when an employee has already sued a corporate employer under Title VII, an official capacity suit against a supervisor adds nothing to the litigation. 2014 U.S. Dist. LEXIS 46228 at *8. This is because the employer and only the employer can be responsible for any relief the employee obtains, even if under the official capacity theory. *Cautela v Ohashi Tecnica U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 68662, *10 (S.D. Ohio 2009). Thus the Court finds it appropriate to enter summary judgment in favor of Defendant Otto.

Defendants' motion with respect to summary judgment for Defendant Otto is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED IN PART AND GRANTED IN PART.** The case as to Defendant Otto is **DISMISSED**.

**SO ORDERED.**

Dated:  November 4, 2016                    s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on November 4, 2016, using the CM/ECF system, which will send notification to all parties.

                                            s/A. Chubb
                                            Case Manager